# Exhibit B20

## Edge Sys LLC v Cartessa Aesthetics LLC

**FILED**
**CLERK**

3:22 pm, Nov 29, 2021

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

EDGE SYSTEMS LLC,

               Plaintiff,

        -against-

CARTESSA AESTHETICS, LLC,

              Defendant.

----------------------------------------------------------------X

**MEMORANDUM AND ORDER**

20-CV-6082 (GRB)(ST)

**APPEARANCES:**

Sean Michael Murray
*Attorney for Plaintiff*
Knobbe Martens
2040 Main St., 14th Floor
Irvine, CA 92614

Steven P. Tepera
*Attorney for Defendant*
Pillsbury Winthrop Shaw Pittman LLP
401 Congress, Ste. 1700
Austin, TX 78701

David George Keyko
*Attorney for Defendant*
Pillsbury Winthrop Shaw Pittman LLP
31 West 52nd Street
New York, NY 10019

**GARY R. BROWN, United States District Judge:**

    In this action, plaintiff Edge Systems LLC ("Edge") seeks recovery for purported infringement of several U.S. Patents[1] against defendant Cartessa Aesthetics, LLC ("Cartessa"), all relating to claimed inventions and improvements in hydradermabrasion systems for treating skin. Both plaintiff and defendant produce and market skincare treatment machines. Upon request of

---

[1] At issue are U.S. Patent Nos. 6,641,591; 8,066,716; and 8,337,513 (collectively the "Asserted Patents"). The parties resolved construction disputes related to U.S. Patent Nos. 9,550,052 and 9,775,646 prior to the hearing.

1

the parties, the Court conducted an expedited *Markman* hearing to resolve claim construction issues as to certain disputed terms.  Additionally, the Court heard argument regarding a motion to strike Cartessa's affirmative defense of unclean hands.  This opinion follows.

*Procedural History*

Plaintiff commenced this action for patent infringement under 35 U.S.C. §§ 271, 284, and 285 against defendant via the filing of a complaint in December 2020.  Docket Entry ("DE") 1.  In February 2021, defendant filed its answer followed by an amended answer.  DE 17, 19.  In an oral decision on April 14, 2021, the Court granted a motion to strike the affirmative defense of unclean hands.  DE 25.  In response, defendant filed a second amended answer.  DE 29.  In so doing, the defendant supplemented its unclean hands defense, adding several pages of supporting facts.  *Id*. Plaintiff then refiled the motion to strike.  DE 32.  While the motion to strike was outstanding, the parties filed a stipulation setting forth a joint disputed claims term chart, DE 35, and submitted claim construction briefs.  DE 38-42.  On October 19, 2021, the Court held a *Markman* claim construction hearing.  Neither side produced testimony.

*Claim Construction Standards*

Several years ago, then-district court Judge Joseph Bianco penned a cogent, thorough description of the applicable standard for a *Markman* hearing:

> Claim construction is "exclusively within the province of the court." *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996).  Such construction "begins and ends" with the claim language itself, *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998), but the court may consult extrinsic evidence "if needed to assist in determining the meaning or scope of technical terms in the claims," *Pall Corp. v. Micron Separations, Inc.*, 66 F.3d 1211, 1216 (Fed. Cir. 1995); *see Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1584 (Fed. Cir. 1996) (explaining that the court may rely on extrinsic evidence, including expert and inventor testimony, dictionaries, and learned treaties).
>
> In construing the claim language, the court must begin with the principle that "the words of a claim 'are generally given their ordinary and customary meaning.'"

2

(*Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*) (quoting *Vitronics,* 90 F.3d at 1582)).  This ordinary and customary meaning "is the meaning that the [claim] term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application."  *Id.* at 1313.  "[T]he person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification."  *Id.*

"In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words."  *Id.* at 1314.  "In such circumstances general purpose dictionaries may be helpful."  *Id.*  In other cases, "determining the ordinary and customary meaning of the claim requires examination of terms that have a particular meaning in a field of art."  *Id.*  In those cases, "the court looks to those sources available to the public that show what a person of skill in the art would have understood the disputed claim language to mean."  *Id.* (internal quotation marks and citation omitted).  These sources include "the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art."  *Id.*

When the specification reveals a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess, the inventor's lexicography governs.  *Id.* at 1316.  Nevertheless, it is improper to read limitations from the specification into the claim.  *Callicrate v. Wadsworth Mfg., Inc.*, 427 F.3d 1361, 1368 (Fed. Cir. 2005) ("'[I]f we once begin to include elements not mentioned in the claim, in order to limit such claim . . . we should never know where to stop.'" (alteration in original) (quoting *Phillips*, 415 F.3d at 1312)).  Thus, the court "do[es] not import limitations into claims from examples or embodiments appearing only in a patent's written description, even when a specification describes very specific embodiments of the invention or even describes only a single embodiment, unless the specification makes clear that 'the patentee . . . intends for the claims and the embodiments in the specification to be strictly coextensive.'"  *JVW Enters., Inc. v. Interact Accessories, Inc.*, 424 F.3d 1324, 1335 (Fed.Cir.2005) (internal citations omitted).

*Easyweb Innovations, LLC v. Twitter, Inc.*, No. 11-CV-4550 (JFB), 2016 WL 1253674, at *5

(E.D.N.Y. Mar. 30, 2016)*, aff'd*, 689 F. App'x 969 (Fed. Cir. 2017); *Soter Technologies, LLC, v.*

*IP Video Corp.*, No. 20 CV 2989 (GRB), 2021 WL 4553188, at *1-2 (E.D.N.Y. Oct. 5, 2021)

3

(same); *Seoul Semiconductor Co., Ltd. v. Satco Prods., Inc.*, No. 19-CV-4951 (GRB), 2021 WL

4810165, at \*1-2 (E.D.N.Y Oct. 15, 2021) (same).  The Federal Circuit has further held:

> Claim construction seeks to ascribe the meaning to claim terms as a person of
> ordinary skill in the art at the time of invention would have understood them.
> *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–14 (Fed. Cir. 2005) (en banc) (citing
> *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)).  In an
> IPR proceeding, claims are given their broadest reasonable interpretation in light of
> the specification.  *In re Cuozzo Speed Techs., LLC*, 793 F.3d 1268, 1279 (Fed. Cir.
> 2015), *cert. granted sub nom. Cuozzo Speed Techs., LLC v. Lee*, ⸺ U.S. ⸺,
> 136 S.Ct. 890, 193 L.Ed.2d 783 (2015).  In construing terms, "the person of
> ordinary skill in the art is deemed to read the claim term not only in the context of
> the particular claim in which the disputed term appears, but in the context of the
> entire patent, including the specification." *Phillips*, 415 F.3d at 1313.  Indeed, the
> specification is "the single best guide to the meaning of a disputed term" and
> "[u]sually, it is dispositive." *Id.*  Thus, "claims 'must be read in view of the
> specification, of which they are a part.'" *Id.* at 1315 (quoting *Markman v. Westview
> Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (*en banc), aff'd*, 517 U.S. 370,
> 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996)).

*SAS Inst., Inc. v. ComplementSoft, LLC.*, 825 F.3d 1341, 1347 (Fed. Cir. 2016), *rev'd and

remanded on other grounds sub nom. SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348 (2018).  With this

standard in mind, the Court turns to the disputed claim terms.

> *Discussion*

> *1.  Markman Hearing*

Before the hearing, counsel appropriately met and conferred, significantly reducing the

number of disputed claim terms, resulting in conservation of judicial resources and substantial cost

savings for the litigants.  Counsel identified eleven disputes, but, in reality, these disputes revolved

around three terms: abrade, sharp, and "sharp edge configured to abrade skin."  As such, the Court

will focus on the principal disputes.  *See Interactive Wearables, LLC v. Polar Electro Oy*, 501 F.

Supp. 3d 162, 171 (E.D.N.Y. 2020) ("Addressing every claim of a challenged patent individually

is not necessary where multiple claims are substantially similar and linked to the same abstract

idea. Thus, where the claims asserted in the patent contain only minor differences in terminology

4

[but] require performance of the same basic process, they should rise or fall together.") (citation

omitted).[2] These disputes are identified and defined by the parties as follows:

| Disputed Term | Edge's Proposed Construction | Cartessa's Proposed Construction |
| --- | --- | --- |
| Abrade/abrading/abraded | remove a portion of the skin surface by friction. Note that "a portion" means more than a de minimis amount of skin | These terms are indefinite.<br><br>In the alternative, they should [be] construed to mean: scape/scraping/scaped |
| sharp | "edges sufficiently sharp to abrade skin, but not necessarily sharp enough to cut the skin" | edge[s] shaped for cutting |
| Sharp edge configured to abrade skin | The parties consent to the following construction:<br><br>"sharp edges that are positioned such that the sharp edge abrades tissue," *see infra* Section 1(B) | |

DE. 35, Ex. A.  The Court hereby construes the claims as follows:

> A.  *"Abrade" and "Sharp."*

The Federal Circuit has upheld *Markman* determinations that "declined to further construe

[a] term because it was a 'straightforward term' that required no construction."  *Summit 6, LLC v.*

*Samsung Elecs. Co.*, 802 F.3d 1283, 1291 (Fed. Cir. 2015).  Claim construction "is not an

obligatory exercise in redundancy."  *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568

(Fed. Cir. 1997).  Two of the disputed terms – "abrade" and "sharp" – fall squarely in this category.

Despite etymological sparring by the parties, common meanings prove satisfactory at this juncture.

Such a holding is consistent with courts which have reviewed these terms in the same or

similar patents.  One district judge reviewed these terms in each of the Asserted Patents and found:

> The Court finds the terms "abrade," "abrasive," "abrading," and their other
> variations as used in the Asserted Patents are easily understood in the surrounding

---

[2] Variations of the disputed terms abrade and sharp appear in each of the Asserted Patents – '591, '716, and '513 – in several claims.  For simplicity, the definitions articulated in this opinion apply to all claims involving these concepts.

context of the claim language and specification.  The Court finds no construction necessary for the term "abrade" and its variations in the context of the Asserted Patents.

. . .

The Court declines to construe the overall claim phrases that include the terms "sharp edge[s]" and/or "sharp element[s]."  Although the Court is not particularly persuaded that these claim phrases need construction at all, it adopts Plaintiffs' proposal and construes the smaller terms "sharp edge[s]" / "sharp element[s]" as "edge[s]/element[s] sufficiently sharp to abrade skin."

*Edge Sys. LLC v. Aesthetic Skin Sys. LLC*, No. 17-cv-4597 (PSG) (AFM), DE 79 at 12, 16 (C.D. Cal Jan. 8, 2019).  Another district judge similarly reviewed these terms, and though settling upon negotiated definitions, noted:

In the end, the Court concludes that ordinary jurors will have little difficulty determining whether or not an "edge" is "sharp"—or, to be more precise, whether something does, or does not, constitute a "sharp edge."

*Edge Sys., LLC v. Venus Concept USA Inc.*, No. 18-cv-62588, 2019 WL 3936379, at *6 (S.D. Fla. Aug. 20, 2019).  "Abrade" is commonly understood in many contexts, including in relation to skin. As to "sharp," anyone who has shaved with a razor, eaten with a knife, or trimmed a fingernail should readily understand this term.  The definitions urged by the parties fail to provide further enlightenment.  Given the relative simplicity of the terms abrade and sharp, the Court declines to construe them and instead assigns the terms their plain and ordinary meanings.  *Summit 6, LLC*, 802 F.3d at 1291 ("'straightforward term' . . . required no construction").

   B.  *Sharp edge configured to abrade skin.*

During the hearing, the parties, working with the Court, came to a compromise on the meaning of the term "sharp edge configured to abrade skin."  DE 47at 56.  This term shall, upon consent of the parties, be construed to mean "sharp edges that are positioned such that the sharp edge abrades tissue."  *Id.* at 57-59.  This stipulated construction helps clarify that the

6

"configuration" of the edge refers to its physical positioning rather than, for example, something inherent in its design.

    *2. Motion to Strike*

    Under Fed. R. Civ. P. 12(f), the Court may strike any "insufficient defense." A motion to strike an affirmative defense is not favored and will not be granted unless "it appears to a certainty that plaintiffs would succeed despite any state of the facts which could be proved in support of the defense." *William Z. Salcer, Panfeld, Edelman v. Envicon Equities Corp.*, 744 F.2d 935, 939 (2d Cir. 1984), *vacated on other grounds*, 478 U.S. 1015 (1986). "'If sufficiency of the defense depends on disputed issues of fact or questions of law, a motion to strike should not be granted.'" *Entergy Nuclear Fitzpatrick, LLC v. United States*, 93 Fed. Cl. 739, 742 (2010), *adhered to on denial of reconsideration*, 101 Fed. Cl. 464 (2011), *aff'd*, 711 F.3d 1382 (Fed. Cir. 2013) (quoting *System Fuels, Inc. v. United States*, 73 Fed.Cl. 206, 216 (2006)). The standard for striking an affirmative defense is three-pronged: (1) there must be no question of fact that might allow the defense to succeed; (2) there must be no substantial question of law that might allow the defense to succeed; and (3) the plaintiff must be prejudiced by the inclusion of the defense. *See GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 97-99 (2d Cir. 2019) (clarifying the three-prong test established in *S.E.C. v. McCaskey*, 56 F. Supp. 2d 323, 326 (S.D.N.Y. 1999)). "[T]he plausibility standard of *Twombly* applies to determining the sufficiency of . . . an affirmative defense, but with recognition that, as the Supreme Court explained in *Iqbal*, applying the plausibility standard to any pleading is a 'context-specific' task." *Id.* at 98. "A factually sufficient and legally valid defense should always be allowed if timely filed even if it will prejudice the plaintiff by expanding the scope of the litigation. A defendant with such a defense is entitled to a full opportunity to assert it and have it adjudicated before a plaintiff may impose liability." *Id.*

The Second Circuit has held that "[a]ffirmative defenses which amount to nothing more than mere conclusions of law and are not warranted by any asserted facts have no efficacy." *Shechter v. Comptroller of New York*, 79 F.3d 265, 270 (2d Cir.1996) (quoting *Nat'l Acceptance Co. of Am. v. Regal Prods., Inc.*, 155 F.R.D. 631, 634 (E.D.Wis.1994) ("affirmative defenses are pleadings, and therefore, are subject to all pleading requirements of the Federal Rules of Civil Procedure")) (internal quotation marks and citations omitted).

Unclean hands may be found "where some unconscionable act of one coming for relief has immediate and necessary relation to the equity that he seeks in respect of the matter in litigation," *i.e.*, "for such violations of conscience as in some measure affect the equitable relations between the parties in respect of something brought before the court." *Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 245 (1933). The unclean hands defense is an "ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief." *Precision Instrument Mfg. Co. v. Automotive Maint. Mach. Co.*, 324 U.S. 806, 814 (1945). "Any willful act concerning the cause of action which rightfully can be said to transgress equitable standards of conduct is sufficient cause for the invocation of the maxim by the chancellor." *Id.* at 815. A defense of unclean hands may be based on fraudulent conduct, but it does not require such a showing. *See, e.g.*, *Gilead Sciences, Inc. v. Merck & Co*, 888 F.3d 1231, 1239 (Fed. Cir. 2018) (unclean hands premised on business and litigation misconduct); *see also Abbvie Inc. v. Boehringer Ingelhelm Int'l GmbH*, No. 17-CV-01065-MS, 2018 WL 2604825, at *1 (D. Del. June 4, 2018) (unclean hands does not require a showing of fraud); *Personalized Media Commc'ns, LLC v. Apple, Inc.*, No. 2:15-CV-01366-JRG, 2021 WL 357495, at *6 (E.D. Tex. Feb. 2, 2021), *adopted by*, 2021 WL 2697610 (E.D. Tex. Feb. 13, 2021) ("unclean hands does not require a showing of fraud.").

To establish a defense of inequitable conduct, "the accused infringer must prove that the patentee acted with the specific intent to deceive the PTO. A finding that the misrepresentation or omission amounts to gross negligence or negligence under a 'should have known' standard does not satisfy this intent requirement." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011). "[T]he inequitable conduct doctrine evolved from . . . unclean hands cases, [and] it came to embrace a broader scope of misconduct, including not only egregious affirmative acts of misconduct intended to deceive both the PTO and the courts but also the mere nondisclosure of information to the PTO." *Id.* at 1287.

Claims of unclean hands, absent allegations of fraud, are pled under the plausibility standard of Fed. R. Civ. P. 8. By contrast, claims of inequitable conduct must be plead under the heightened Fed. R. Civ. P. 9(b) standard, which requires that "the circumstances constituting fraud or mistake . . . be stated with particularity." *Exergen Corp. v. Wal–Mart Stores, Inc.*, 575 F.3d 1312, 1326 (Fed. Cir. 2009); *see also Ferguson Beauregard,/Logic Controls, Div. of Dover Resources, Inc. v. Mega Sys., LLC*, 350 F.3d 1327, 1344 (Fed. Cir. 2003) (stating that "inequitable conduct, while a broader concept than fraud, must be pled with particularity" under Federal Rule of Civil Procedure 9(b)).

Cartessa's unclean hands defense encompasses three component parts: Edge allegedly acted with unclean hands by (1) "trying to create a public appearance that additional art had been considered by the USPTO when in fact it had not, by repeatedly filing letters referencing other applications and other prosecutions, where the examiner does not in fact review the documents referred to by reference;" (2) creating "mass patent assertions, . . . large draft pleadings, and . . . short windows in which to conduct a reasoned analysis . . . to shift the cost of legal analysis to the Defendant over the perfunctory analysis performed by Plaintiff, and to overwhelm Cartessa and

9

obscure the weakness and falsity of the individual allegation;" and (3) asserting positions in prosecution and litigation that "are inconsistent with [the] meanings of terms as expressed within the patent specification, inconsistent with their plain and ordinary meaning, and inconsistent with the meaning as understood by an ordinarily skilled artisan." DE 29 at 10, 13, 14 ("Second Amended Answer").

Plaintiff claims that given the Patent Office's role, Cartessa's defense is actually an "inequitable conduct" defense in disguise "that must comply with the Federal Circuit's heightened pleading standard." DE 32-1 at 12. The Federal Circuit has cautioned against "the potential for misuse" of the unclean hands doctrine, and the need to "ensure that [it] operates in harmony with, and does not override" inequitable conduct. [3] *Id.* at 16 (quoting *Gilead*, 888 F.3d at 1240 at n.3). But in *Gilead* the Federal Circuit affirmed a district court's finding that business and litigation misconduct other than fraud could establish a defense of unclean hands. *Id.* Cartessa disavows any claim of inequitable conduct, and explicitly disclaims any notion that Edge committed fraud on the USPTO. DE 32-2 at 12. Instead, defendant characterizes its defense as encompassing a pattern of aggressive and deceptive acts. *Id.* at 9.

On this motion, Edge has not established that the defense will fail, nor has it shown any material prejudice it will suffer as a result of its inclusion. On balance, drawing all reasonable inferences in favor of the non-movant, the Court finds the defense is sufficiently pled at this juncture.

*Conclusion*

Based on the foregoing, the Court declines to construe the terms "abrade" and "sharp" and

---

[3] The cases relied upon by plaintiff, DE 32-4 at 12, are not factually analogous to the position asserted here. Those cases all involved duplicative pleadings, which were struck in part on that ground. *See Saye v. Old Hill Partners, Inc.*, 478 F.Supp.2d 248, 278 (D. Conn. 2007); *Fonsell v. New York Dock Ry.*, 198 F. Supp. 332, 337 (E.D.N.Y. 1961); *Haggerty v. Burkey Mills, Inc.*, 211 F. Supp. 835, 837 (E.D.N.Y. 1962). No such allegation is made here.

10

instead assigns them their plain and ordinary meanings and adopts the agreed upon construction

of "sharp edge configured to abrade skin." The Court further DENIES the motion to strike

defendant's affirmative defense of unclean hands.

**SO ORDERED.**


Dated: November 29, 2021
       Central Islip, New York

                                        /s/ Gary R. Brown

                                        _____

                                        GARY R. BROWN
                                        UNITED STATES DISTRICT JUDGE