**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | | |
|---|---|---|
| HYDRAFACIAL LLC,<br><br>Plaintiff,<br><br>v.<br><br>AESTHETIC MANAGEMENT PARTNERS, LLC and AESTHETIC MANAGEMENT PARTNERS INC.,<br><br>Defendants. | ) | Case No. 2:24-cv-02480-SHL-tmp |

**ORDER GRANTING DEFENDANTS AESTHETIC MANAGEMENT PARTNERS, LLC AND AESTHETIC MANAGEMENT PARTNERS, INC.'S PARTIAL MOTION TO DISMISS**

Before the Court is Defendants Aesthetic Management Partners, LLC and Aesthetic Management Partners, Inc.'s ("AMP") Partial Motion to Dismiss the Complaint Under Fed .R. Civ. P. 12(b)(6), filed June 23, 2025. (ECF No. 59.) Plaintiff HydraFacial LLC ("HydraFacial") responded on July 21, 2025 (ECF No. 75), and AMP replied on August 4, 2025 (ECF No. 87).

HydraFacial's complaint alleges that AMP is infringing on five of HydraFacial's patents that are used in HydraFacial's skin resurfacing and rejuvenation systems. (See generally ECF No. 1.) In the Motion, AMP seeks to dismiss all the claims from HydraFacial's lawsuit that preceded cease-and-desist letters HydraFacial sent AMP that put it on notice of the alleged infringing activity, arguing that there is no plausible allegation in HydraFacial's complaint that AMP had knowledge of the patents before its receipt of those letters. (ECF No. 59 at PageID 1472.) AMP further asserts that, because HydraFacial failed to allege that it consistently marked its products as required under 35 U.S.C. § 287 prior to the issuance of the letters to AMP,

HydraFacial is not entitled to damages that preceded the issuance of the cease-and-desist letters. (Id.)

For the reasons stated below, the Motion is **GRANTED**.

## BACKGROUND[1]

HydraFacial bills itself as "a worldwide leader in the design, development, manufacture, and sale of high-quality skin resurfacing and rejuvenation systems, including hydrodermabrasion systems," which "rejuvenate skin by cleaning and exfoliating the skin surface, extracting debris from pores, and nourishing the skin's surface with therapeutic solutions that moisturize and protect the treated skin surface." (ECF No. 1 at PageID 3.) This case involves allegations that AMP is infringing on five of HydraFacial's patents used in those systems.[2]

HydraFacial has developed and patented several hydrodermabrasion systems, including HydraFacial MD, the HydraFacial Tower, the HydraFacial Allegro, the HydraFacial Wave, the HydraFacial Elite, the HydraFacial Nectre, the HydraFacial Core, and its current flagship system, the HydraFacial Syndeo. (Id. at PageID 3–4.) AMP is a competitor of HydraFacial's in the aesthetic medical device realm, particularly with its AquaFirme XS system, which, like HydraFacial's systems, is also a "a hydrodermabrasion device for treating the skin surface of a patient." (Id. at PageID 5.)

According to HydraFacial, the similarities between its systems and AMP's AquaFirme XS system run deep, in part because AMP has infringed multiple HydraFacial patents in the

---

[1] The background in this case is discussed in the Court's previous orders. (See ECF Nos. 162, 163.) Only the facts relevant to this Motion are discussed herein, as gleaned from HydraFacial's complaint, and are taken as true for the purposes of deciding this Motion.

[2] The patents at issue are Patent Nos. 9,550,052 ("the '052 Patent"), 11,446,477 ("the '477 Patent"); 11,865,287 ("the '287 Patent"); 10,357,641 ("the '641 Patent"); and 10,357,642 ("the '642 Patent") (collectively the "Asserted Patents").

construction of the AquaFirme XS device. HydraFacial asserts that it and AMP were "competitors in the skin resurfacing equipment industry when" AMP first began selling the AquaFirme XS system, and that AMP was familiar with the industry at its founding, and knew that HydraFacial was an industry leader at the time. (Id. at PageID 8.)

Given AMP's familiarity with HydraFacial and its products, HydraFacial asserts that AMP "necessarily would have researched [HydraFacial] and its patent portfolio before introducing the" AquaFirme XS, and, as part of that research, AMP would have visited [HydraFacial]'s website, where at least the '052 Patent was prominently listed at least as early as June 2018 . . . and where [HydraFacial] continues to list patents." (Id. at PageID 8.) HydraFacial alleges that AMP "additionally would have discovered the patents and any published pending patents not listed through investigation." (Id.)

At the very least, HydraFacial asserts, AMP had knowledge of the patents in late 2023 and early 2024. In October 2023, HydraFacial sent a letter to AMP in which it informed AMP that it was infringing on each of the Asserted Patents, save for the '287 Patent, which had not yet issued. (Id.; ECF No. 1-19.) In January 2024, HydraFacial notified AMP that it was also infringing on the '287 Patent. (Id. at PageID 9.)[3]

HydraFacial alleges that AMP continues to infringe on the Asserted Patents through its AquaFirme XS system, and that AMP knew, or should have known, that its "actions constituted and continue to constitute infringement of the Asserted Patents." (Id.) HydraFacial asserts that AMP "knowingly and intentionally infringed and continue to infringe" each of the Asserted

[3] AMP does not dispute that it had knowledge of the alleged infringement upon receipt of the cease-and-desist letters and points out that it seeks only dismissal of the indirect infringement and willful infringement allegations predating the notice letters. (ECF Nos. 59 at PageID 1472; 87 at PageID 4392.)

Patents, "through, for example, the manufacture, use, sale, offer for sale, and/or importation into the United States," the AquaFirmeXS system or its component and replacement parts. (Id. at PageID 9, 20, 29, 38, 44.) HydraFacial alleges AMP engaged in willful and indirect infringement. (See ECF Nos. 59 at PageID 1472; 75 at PageID 4147.)[4]

**LEGAL STANDARD**

Federal Rule 12(b)(6) authorizes courts to dismiss a complaint if it fails to comply with the pleading standard in Rule 8. Fed. R. Civ. P. 12(b)(6). Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of the rule is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (emphasis added) (quoting and discussing, inter alia, Conley v. Gibson, 355 U.S. 41, 47 (1957)).

Although Rule 8 does not require detailed factual allegations, a pleading must include more than "an unadorned, the-defendant-unlawfully-harmed-me accusation," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), and should nudge a plaintiff's claims "across the line from conceivable to plausible." Twombly, 550 U.S. at 570. "While plausibility requires relief to be more than speculative, it need not be probable; rather, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely.'" Montesi v. Nationwide Mut. Ins. Co., No. 12-cv-02399, 2013 WL

[4] As AMP explains, and HydraFacial does not dispute, "[i]ndirect infringement (i.e., inducement of infringement under 35 U.S.C. § 271(b) and contributory infringement under 35 U.S.C. § 271(c)) and willful infringement require knowledge of the asserted patent." (ECF No. 59 at PageID 1472.)

4522905, *2 (W.D. Tenn. 2013) (quoting Erie County v. Morton Salt, Inc., 702 F.3d 860, 867 (6th Cir. 2012)).

When considering a 12(b)(6) motion, the Court must accept all factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff. Adkisson v. Jacobs Eng'g Grp., Inc., 790 F.3d 641, 647 (6th Cir. 2015) (internal citation omitted).

**ANALYSIS**

According to AMP, HydraFacial's complaint "contains no allegation that AMP knew of any of the asserted patents before receiving" the notice letters from HydraFacial in October 2023 and January 2024. (ECF No. 59 at PageID 1473.) AMP asserts that HydraFacial's failure to allege that AMP had knowledge of the patents prior to the issuance of those letters warrants dismissing any infringement claims that preceded them. Relatedly, AMP asserts that HydraFacial "failed to mark most of its products with the numbers of the patents asserted in this case that HydraFacial itself asserts cover those products—thus making it impossible for HydraFacial to plead compliance with the marking statute," that is 35 U.S.C. § 287. (Id. at PageID 1472.) As AMP explains, the marking statute "prohibits patent owners from collecting infringement damages unless they mark their products with the appropriate patent numbers, or provide actual notice to the alleged infringer." (Id.)

HydraFacial counters that AMP asks too much of the complaint at the pleading stage, where "a plaintiff must simply make allegations that, when viewed in the light most favorable to plaintiff, support a reasonable inference that the defendant knew of plaintiff's patent(s)." (ECF No. 75 at PageID 4152–53 (citing Bio-Rad Labs., Inc. v. 10X Genomics, Inc., No. 19-CV-12533-WGY, 2020 WL 2079422, at *3-4 (D. Mass. Apr. 30, 2020).) HydraFacial contends that AMP's arguments for dismissal "put[] the burden on HydraFacial to **prove** the details of its case

at the outset." (Id. at PageID 4147.) Ultimately, HydraFacial asserts that AMP's dismissal "arguments fail because HydraFacial pleaded facts that, if taken as true, support a plausible inference that Defendants were aware of HydraFacial's patents prior to the cease-and desist letters." (Id.)

Because at this stage HydraFacial has failed to sufficiently plead AMP had knowledge of the Asserted Patents before HydraFacial issued the cease-and-desist letters, as well as the fact that HydraFacial failed to sufficiently plead that it complied with the marking statute, the Partial Motion to Dismiss is **GRANTED**.

## I. HydraFacial Fails to Sufficiently Allege that AMP Had Knowledge of the Asserted Patents Before the Issuance of the Cease-and-Desist Letters

To support its argument for partial dismissal, AMP leans heavily on the recent decision in HydraFacial LLC v. Medicreations LLC, 768 F. Supp. 3d 1129 (D. Nev. 2025), where it asserts that the court "granted an identical motion by a party accused of infringing the same patents," (ECF No. 59 at PageID 1472), as well as what it describes as "five representative decisions from three different district courts granting motions to dismiss" (ECF No. 87 at PageID 4391). According to AMP, in Medicreations, HydraFacial asserted infringement against Medicreations of "the same five patents" asserted here, as well as others not at issue in this case. (ECF No. 59 at PageID 1473.)

AMP asserts that barebones allegations offered in HydraFacial's complaint here—that "AMP and HydraFacial are 'competitors' and AMP knew HydraFacial was an 'industry leader'"; that "AMP 'necessarily would have researched Plaintiff and its patent portfolio before introducing' its accused product, including visiting a HydraFacial website where 'at least the '052 Patent was prominently listed'"; and that, "as to patents not listed on HydraFacial's website, AMP 'would have discovered' those patents 'through investigation'"—are "the same generic,

speculative allegations that the District of Nevada court already determined, when granting Medicreations' motion to dismiss, are insufficient to state a plausible claim that an accused infringer had knowledge of HydraFacial's patents before receiving a notice letter from HydraFacial." (Id. at PageID 1474 (citations omitted).)

HydraFacial responds that, not only are the Medicreations and the other cases AMP cites non-binding, out-of-circuit decisions, but they are also distinguishable. Moreover, it asserts that it anticipates "that discovery on this issue will further reveal the details of AMP's knowledge of HydraFacial's patents prior to HydraFacial's cease and desist letters." (ECF No. 75 at PageID 4153.)

It is true that Medicreations and the other cases HydraFacial relies upon are from out-of-circuit and thus not binding on this Court, but that does not take away from their persuasiveness. The Medicreations case, which deals with many of the same patents at issue here, and presents many of the same issues, is particularly relevant.[5] In that case, the Nevada district court rejected the same speculative allegations that largely mirror those in this case, as insufficient to state a claim upon which relief could be granted. Most fundamentally, the court determined that HydraFacial's allegation that "'Defendant was familiar with Plaintiff and its aesthetic skin-resurfacing products' when it launched its own allegedly infringing products is conclusory and does not provide additional support" to sufficiently state a claim. 768 F. Supp. 3d at 1137.

[5] As AMP explains in its reply, HydraFacial "insinuates that Medicreations involved 'different' factual allegations[,] but identifies no differences, and admits the 'similarities' in a footnote." (ECF No. 87 at PageID 4392 n.1.) To be sure, there are some differences between the two cases, including that there are additional patents alleged to have been infringed in Medicreations. But the gravamen of the two cases—and the elements relevant to AMP's motion to dismiss here—are nearly identical.

The court in Medicreations also distinguished the facts before it—and, by extension, many of the factual allegations before this Court—from other cases where courts determined that infringement was sufficiently plead. Those cases, the court explained, "included specific facts indicating that the defendant had access to, or knowledge of, the products bearing the patent markings." 768 F. Supp. 3d at 1137. But here, the foundation for the allegation that AMP infringed HydraFacial's patents is that the parties were competitors, the unsupported speculation that AMP necessarily would have researched HydraFacial and its patent portfolio and visited the HydraFacial website before introducing the AquaFirme XS system and would have discovered patents not listed on HydraFacial's website through investigation. That sort of speculation does not move the allegations in the complaint from possible to plausible. HydraFacial may believe that discovery "will further reveal the details of AMP's knowledge of HydraFacial's patents prior to HydraFacial's cease and desist letters," but with little to support that belief other than the fact that AMP is in the same industry and probably researched HydraFacial's patent portfolio, it is insufficient to survive a motion to dismiss. Most litigants believe that discovery will reveal details that will support their allegations. But such a belief, no matter how strong, does not make allegations plausible, as "federal courts will not 'unlock the doors of discovery' for a fishing expedition based on a plaintiff's speculative assertions." Changizi v. Dep't of Health & Hum. Servs., 82 F.4th 492, 498 (6th Cir. 2023) (quoting Iqbal, 556 U.S. at 678–79).

The cases HydraFacial cites are otherwise distinguishable, and do little to support a finding that it has sufficiently stated a claim. In Ascion LLC v. Ashley Furniture Indus., Inc., No. 19-CV-856-JDP, 2020 WL 998733, at *1 (W.D. Wis. Mar. 2, 2020), the court relied upon its standardized pretrial disclosures that force both sides to lay out their core contentions element-by-element early in the case to support its assertion that, at least in that district, "[m]otions

attacking patent infringement pleadings are generally a waste of resources for the parties and the court." But as important, the court noted that the allegations were "pretty meager," while noting that "[m]aybe Ascion could make a claim against Ashley Furniture based on post-suit knowledge, which it also alleges. Similarly meager allegations have survived a motion under Rule 12(b)(6)." Id. at *1. Here, AMP has specifically avoided seeking to dismiss the post-notice infringement claims, further distinguishing the cases.

Meanwhile, the allegations of pre-suit knowledge by the defendant in Simplivity Corp. v. Springpath, Inc., No. CV 4:15-13345-TSH, 2016 WL 5388951 (D. Mass. July 15, 2016), were much more detailed than those HydraFacial offered in this case and included allegations that the defendant "surreptitiously investigated" the plaintiff's technology and one of its founders appeared at the plaintiff's trade-show booth, asked a number of specific engineering-related questions about the technology, and, when pressed to disclose his identity, did not reveal his connection to the defendant. Id. at *2. Even against this backdrop of detailed allegations, the court was circumspect about whether the plaintiff's allegations regarding pre-suit knowledge were enough to state a claim, explaining that, "[p]erhaps in isolation, none of these allegations is enough to raise [plaintiff's] entitlement to relief from speculative to plausible. Collectively however, they suffice, even if barely so, to support a reasonable inference of [defendant's] pre-suit knowledge of the [p]atent." Id. at *10. The allegations in that case are much more detailed than those alleged by HydraFacial here, and still barely offered enough detail to survive a motion to dismiss.

Finally, Carnegie Institute of Washington v. Pure Grown Diamonds, Inc., 459 F. Supp. 3d 502 (S.D.N.Y. 2020), comes the closest to supporting HydraFacial's pre-suit knowledge argument. But even there the court deemed its decision to deny a motion to dismiss "something

of a close call," even though the plaintiff alleged a "general notoriety of their patents in the relevant field," as well as the fact that the defendant's Chief Technical Officer was "the named inventor on at least seven" patents in the field. 459 F. Supp. 3d at 508. The details in that case that support a finding of knowledge of the allegedly infringed patents exceeded those offered by HydraFacial here, and again, constituted barely enough detail to survive a motion to dismiss.

As the foregoing illustrates, dismissal of HydraFacial's claims for infringement that preceded the cease-and-desist letters is warranted. Therefore, all claims alleging willful, induced, and contributory infringement claims with respect to the first, second, fourth, and fifth claims for relief based on activity that occurred prior to October 10, 2023 (the issuance of the first cease-and-desist letter), shall be dismissed for failure to plead AMP's knowledge of the '052, '477, '641, and '642 patents.

Similarly, all claims alleging willful, induced, and contributory infringement claims with respect to the third claim for relief based on activity that occurred prior to January 26, 2024 (the issuance of the second cease-and-desist notice), shall be dismissed for failure to plead AMP's knowledge of the '287 Patent.

## II. HydraFacial Insufficiently Alleged Compliance with the Marking Statute

Despite HydraFacial's failure to properly plead notice prior to the cease-and-desist letters, it could recover damages for the pre-notification period if it properly pleads compliance with marking requirements. See Lubby Holdings LLC v. Chung, 11 F.4th 1355, 1359 (Fed. Cir. 2021) ("If a patentee who makes, sells, offers for sale, or imports his patented articles has not 'given notice of his right' by marking his articles pursuant to the marking statute, he is not entitled to damages before the date of actual notice.") (quoting Arctic Cat Inc. v. Bombardier Recreational Prods. Inc., 876 F.3d 1350, 1365 (Fed. Cir. 2017)). In general, the marking statute

provides two ways for a patent holder to mark a patented product to give notice to the public: "either by fixing word 'patent' or the abbreviation 'pat.', together with the number of the patent, or by fixing thereon the word 'patent' or the abbreviation 'pat.' together with an address of a posting on the Internet, accessible to the public without charge for accessing the address, that associates the patented article with the number of the patent." 35 U.S.C. § 287(a). Under the statute, if a patentee fails to mark any patented article, "no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice." See also Arctic Cat Inc, 950 F.3d 860 at 865 (a patentee who "fails to mark in accordance with § 287 . . . cannot collect damages until it either begins providing notice or sues the alleged infringer—the ultimate form of notice—and then only for the period after notification or suit has occurred").

AMP argues that HydraFacial failed to sufficiently mark the Asserted Patents under the marking statute—in fact it "**fails to even plead** compliance with Section 287"—therefore, to the extent that AMP is liable for any infringing activity, HydraFacial would only be entitled to damages that came after the cease-and-desist letters were issued.

HydraFacial counters that it sufficiently pleaded in compliance with Section 287 when it asserted that it "physically marks its products with label explaining that 'THIS DEVICE IS COVERED BY ONE OR MORE U.S. AND INTERNATIONAL PATENTS. PATENT INFO: HYDRAFACIALCO.COM/PATENTS.'" (ECF No. 75 at PageID 4148–49 (citation omitted).) Beyond that, HydraFacial asserts that "[t]he Federal Circuit allows allegations of compliance with the § 287 notice requirements to be pleaded generally and has adopted a 'very liberal view' of what is sufficient to plead such compliance." (Id. at PageID 4155 (quoting, e.g., 6 Robert A.

Matthews, Jr., Annotated Patent Digest § 39:10 (October 2024) ("The 'Federal Circuit appears to have adopted a very liberal view on what it will find acceptable for pleading purposes to comply with the marking statute' because the 'Federal Circuit has held that merely pleading willful infringement can suffice for pleading the requisite notice under § 287(a).'")

To begin, AMP persuasively argues that the Eastern District of Texas decisions that buttress HydraFacial's argument regarding § 287's notice requirements are based on a misapplication of the decision in Sentry Protection Products, Inc. v. Eagle Manufacturing Co., 400 F.3d 910 (Fed. Cir. 2005). As AMP asserts, if pleading willful infringement were enough to sufficiently plead marking, then Section 287's explicit marking requirements would be undermined, as "[a]n accused infringer's independent knowledge of a patent does not absolve the patent owner of its failure to properly mark its patented products." (ECF No. 87 at PageID 4397.)

The Court also notes that HydraFacial asserts that its patent marking "website prominently displays several HydraFacial patents, including some of the Asserted Patents," and that "the '052 Patent has been listed on HydraFacial's patent webpage since at least June of 2018." (ECF No. 75 at PageID 4149.) The absence of any reference to the remaining Asserted Patents is conspicuous, and, as AMP points out, the documents that HydraFacial itself has provided demonstrate that it "**consistently failed** to associate the '052 patent with the Allegro product" and a later version of HydraFacial's patent webpage "not only fails to associate the Allegro with **any** of the four asserted patents that had by then issued; it does not list the Elite product at all, despite the Elite having launched months earlier." (ECF No. 87 at PageID 4395.)

So, even if at some point prior to issuing its initial cease-and-desist letter HydraFacial sufficiently marked the '052 patent or any of the other Asserted Patents, the record demonstrates

that such marking was not consistent across time or across HydraFacial's multiple products that featured the patented items. This practice undermines HydraFacial's allegation that "AMP would have found its patent marking website, which listed HydraFacial's patents such as the asserted '052 patent, when researching HydraFacial." As the Federal Circuit has stated, although "a delay between issuance of the patent and compliance with the marking provisions of section 287(a) will not prevent recovery of damages after the date that marking has begun . . .[,] once marking has begun, it must be substantially consistent and continuous." Am. Med. Sys., Inc. v. Med. Eng'g Corp., 6 F.3d 1523, 1537 (Fed. Cir. 1993). Ultimately "[t]he patentee bears the burden of pleading and proving he complied with § 287(a)'s marking requirement." Arctic Cat Inc. v. Bombardier Recreational Prods. Inc., 876 F.3d 1350, 1366 (Fed. Cir. 2017). HydraFacial has failed to do so here.

It is an open question as to whether HydraFacial will be able to prove infringement. But there is no question that, as plead, the triggering date for any recovery related to such infringement is tied to the issuance of the cease-and-desist letters. Therefore, all claims for damages with respect to the first, second, fourth, and fifth claims for relief based on activity that occurred prior to October 10, 2023 (the issuance of the first cease-and-desist letter), shall be dismissed for failure to plead compliance with the marking statute. Similarly, all claims for damages with respect to the third claim for relief based on HydraFacial's activity that occurred prior to January 26, 2024 (the issuance of the second cease-and-desist notice), shall be dismissed.[6]

---

[6] HydraFacial requests that, "[i]f the Court were to grant any portion of AMP's motion, HydraFacial respectfully requests leave to amend its pleadings." (ECF No. 75 at PageID 4156.) Unlike in the Medicreations matter, where HydraFacial "affirmatively asserted that its products were actually marked" 768 F. Supp. 3d at 1135, HydraFacial can only be said to have made such a claim in this case regarding the '052 Patent. And the documents in the record demonstrate that

**IT IS SO ORDERED,** this 9th day of September, 2026.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
CHIEF UNITED STATES DISTRICT JUDGE

---

markings related to that Patent were inconsistent over time. To the extent HydraFacial seeks leave to amend related to marking, that request is **DENIED**, as any such amendment would be futile. See Foman v. Davis, 371 U.S. 178, 182 (1962) ("In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given.") To the extent HydraFacial seeks leave to amend to include additional allegations related to AMP's knowledge of the patents, that is also **DENIED** based on futility.